case number 19-5252. Billion Spirits, LLC and Shigarupati Technologies Private Limited Appellants v. United States of America et al. Mr. Imord for the appellants, Mr. Overbold for the appellees. Good morning. Mr. Imord, please proceed when you're ready. Thank you, your honor. May it please the court, Jonathan Imord on behalf of the appellants. This case concerns alcohol and TTB censorship of two science-based health claims. One on the effect of an additive NTX on reducing alcohol-induced DNA damage and the other on the additive's effect in protecting DNA from alcohol-induced damage. The science of record supports the claims. There is no science of record against them. In this situation, INRI RMJ applies because the claims are supported by scientific evidence. They are by definition not inherently misleading, so they are at worst potentially misleading, and the Supreme Court has made clear that disclaimers are the resort for the government in such a circumstance, not outright suppression. See also this court's decision in Pearson v. Shalala. I will focus on four reversible errors in the decision below, involving one, the violation of the First Amendment free speech and Fifth Amendment procedural due process rights, two, unlawful delegation of agency decision-making power, three, false representations of the record below, and four, the court's error in defining the state's interest not to be what the TTB defined its interest to be, and fifth, the erroneous exclusion of extra record evidence. The court erroneously gave TTB Chevron deference on the First Amendment claim and on the Fifth Amendment claim. De novo review is constitutionally required, see Peel, 496 U.S. at 108. Whether the inherent characteristics of a statement places it beyond the protection of the First Amendment is a question of law over which this court exercises de novo review. See also this court's decision in Pearson v. Shalala, and then also an independent judicial review of the constitutional facts is required, see Hurley, 515 U.S. at 567. The reaches of the First Amendment... Can I ask you about the precedent? Yes, I want to make sure Judge Katsas is audible when he's asking his question, please. Can you hear me? Yes. Yes, Your Honor. Okay. So on the precedent, you make a very strong argument under Peel, but we have Palm wonderful, which is a more recent case and which is pretty directly on point. So how do we assess earlier Supreme Court opinion, which seems pretty strongly to help you? But at least one later D.C. Circuit opinion that seems almost on all fours against you. So Palm is readily distinguishable because it's the post-publication context, and the court there assessed actual market evidence of deception as the FTC found it. On the specific question of the standard of review when an appellate court considers whether speech is or is not misleading? Well, in order to apply the Central Hudson standard, and I don't believe there's any basis for exception to that. In fact, in Ruben v. Coors at 482 note two, the court expressly said that commercial speech in the alcohol context could not be accepted from Central Hudson. When you apply Central Hudson, you have necessity under three of the four prongs must assess the facts de novo. There can be no ascertainment under the precedent that the harms recited are real. So can I ask for clarification just to make sure that we're all talking about the same thing? So there's potentially a distinction between the standard of review for the factual findings about the scientific studies, and then the standard by which we assess whether given those factual findings, the standard of misleadingness is met. And I just want to make sure I understand which one you're talking about, because Palm Wonderful speaks directly to the former question about the standard of review for factual findings and deems the standard of review to be substantial evidence. There's also some language in the opinion about the ultimate question of whether the speech is misleading. But I want to make sure I understand which one of those two aspects of the inquiry you're directing your argument to. I think it's particularly appropriate, and I hammer on this point, that Palm deals in the post-publication context. This case, like Pearson, deals in the prior restraint pre-publication context. That's critically important on a substantive basis, because the court in Palm has evidence of marketing. They have actual evidence of the reception of the speech and conclusions from an expert agency as to its deceptiveness. There's a long line of cases dating back to the origins in the progressive era of the FTC that the FTC would be carved out and given this unique degree of deference in light of its role in policing the market and prosecuting post-publication. This is quite different. This is in a pristine scientific environment. There hasn't been any marketing. So the court is looking at, as did the agency, the speech in issue directly and the science supportive of it, as opposed to anything that would relate to deceptiveness from the market. And in order to of necessity must look at the science. So it's not only a matter that constitutional laws assess, but for the court not to abdicate its essential responsibility to say what the law is under the Constitution, given the central Hudson standard, it must of necessity look at the actual facts. And that's what Pearson did. Judge Cassis, were you trying to ask a question? I think sometimes I mean, suppose we disagree with you that the distinction between prior restraint and subsequent punishment or advisory opinions matters on this one question. We still have, and I was focused on the fact part of what the chief judge was talking about. We still have this decision, which seems to say that the factual assessment of whether or not particular speech is misleading just gets substantial evidence review and seems a lot like what we have here. Well, in this situation, you end up with a horrible conundrum, and that is that an agency that has a long history of censoring speech, including in cores directly on point by the Supreme Court, it would be in a conflicted situation because, of course, its prosecutorial interest is in defending itself and its judicial interest then merges with that. And in this case, note the facts create a crack in the government's case. If we take a look at JA 1092 to 96, there the agency itself admits, even despite its bias against the claim, that the evidence was mixed, it says. Mixed is unfortunate because their term mixed doesn't mean any evidence against the claim. There is none. For NTX in protecting DNA from alcohol-induced damage with one study, PANDIT, representing 50 subjects, showing a significant reduction in certain measures of DNA damage at some time points after administration of NTX. So the point is, this is not a situation where there is no evidence and the government even admits it in its own findings. That leads us then to necessarily a fulsome application of the central Hudson standard. I have six minutes. I might, with your indulgence, take a bit of a deviation to cover a matter of fact that I think is troubling in the government's brief. And I want to be sure that the court has an adequate appreciation of the significance. The government takes the position that the formula here was not defined. In fact, there are only two bases for the government's calling into question science. One, that the treatment. With regard to the argument about the indeterminacy of the formula, if you look in the record, if you see JA903-13, JA752-7, on July 30, 2014, TTB was informed at a pre-petition meeting with Belian that two studies it presented, one human clinical and one animal, used the Belian Vodka with NTX formula. Then if you look at the pandid study itself, which was submitted with the original petition before the TTB, it states that the study used NTX in the quote, patented proportion, unquote, JA932. Then if you look at additionally, TTB had evidence of the formula in the petition, JA500, Exhibit 1, the Stowe's report, where it explains there NTX patent is, that is what the formula is, and gives the range of 0.5 to 3.0% for mannitol, 0.05 to 3.3% for glycyrrhizin in the liquid that was used. TTB acknowledged that the NTX patent ranges were, that is that the patent was used, in the denial letter at page 33, J1087. That's to that point. Can I ask one question about the overall context of what we're dealing with here? I'm going to ask the government about this too. This relates in some measure to your prior restraint argument, but it also relates to the central Hudson point, which is, as I under 27 CFR 70.471, and you get a response from the agency. Does that response from the agency have any legal consequences for you? Because it's not an enforcement action that, it's not an order that requires you to cease and desist from any conduct. It's not the labeling regime whereby you can't go forward without pre-approval because you didn't pursue that route. What we're talking about is in the nature of an advisory letter that tells you the agency's views, but it's not apparent to me what the actual legal consequences of the ruling that you got from the agency. The agency has no set method for petitioning for a health claim. They don't have a means, even their COLA process online does not include an ability to accept the volume of science that doesn't allow it to be submitted. I think I might be asking something a little different. So at least with the labeling, we know that the regulations require you to obtain pre-approval for labeling. And if you just proceed ahead and include something in your label without getting the pre-approval, well, that in itself is a violation and the agency can take action against you because you didn't get the pre-approval. If we, if we don't talk specifically about labeling though, because this case isn't about the COLA process, at least not directly. This case is about this letter ruling process under the reg 70.471. On that, what's the legal consequence of the 47 page determination you got from the agency? What is it? Actually, the consequence, if you read the TTV's actual order, it accepted as it told us to, to accept the COLA and the, the petition for the health claims are, are conjoined in that. For example it says in the order, TTV views your petition as a request that TTV issue a ruling on whether use of the labeling and advertising statements set forth in the petition would violate TTV regulations. That's true. And we can ask the government about this, but I don't read that to mean that if you went forward with the label, let's say that the problem would be something about this particular ruling as opposed to just the general overarching mandate that the agency's imposed that you can't issue a label without pre-approval. That's going to be a problem no matter what. But with respect to advertisements, for example, what's the consequence of this? Because as I understand it, you don't need pre-approval to do an advertisement. Now you have a letter from the agency that tells you what they think about it. But if you just went forward and did advertisements, it's not apparent to me that this letter puts you in any worse a position than you would have been otherwise. Well, the statute would prohibit us from engaging in advertising that the agency prohibits for labeling. And it's very clear from the enforcement history of this agency and from what they have told us directly that were we to proceed with the content that we're talking about here, it would be deemed a violation of their regulations. And also they could invoke the criminal provisions of the act and prosecute us. It is simply not the case that they either interpreted this to be separate and to afford us an opportunity to advertise. They viewed both together in their order and they prohibited both together in their order. And we couldn't proceed in any event because of the decision, because it makes clear that were we to do so, we would be advertising content that was prohibited in the labeling context, even were we to view that as a limited context for labeling because of the criminal provisions of the act. Mr. Emore, if I take you back for a moment to your use of the word conjoined. As I understand it here, you had filed your petition on April 13th in 2016. And a few days later, Franklin, with which you have a relationship, filed the COLA applications, correct? Yes, Your Honor. The agency treated those, I mean, you were complaining in a sense that there was no way to, at least in your brief, there was no way to submit the studies in conjunction with the petition. But you found what seems like a perfectly sensible way to do that. And the agency accepted and treated that as being your submission in support of the petition, correct? Yes, Your Honor. So is there any prejudice to you at all from the way in which this was handled? Yes, it's indicative of the reason why the extra record evidence should be included, which is that they don't have, they have a superficial health claim process. That even suggests bias. They don't have in place a mechanism for receipt of a petition to review the health claims that makes any sense at all. You have the COLA system that you're required to use, and we did. And Franklin, our agent, used it and cross-referenced the petition. Likewise, in the petition, we cross-referenced the COLA. But to get the actual studies before the agency, it wouldn't fit within their online COLA. And so we had to submit it through a separate means in conjunction with the agency. I just recounted that. And what's wrong with that? You got it before the agency, they accepted it as you intended to be in support of your petition. Yes, Your Honor. Thank you. So I don't see what you're complaining about in that respect. I agree. I agree. They dealt with this in a fulsome manner. And we ought not have our First Amendment rights violated because this agency hasn't got its act together. He's telling the truth. Can I ask you about the disclaimer process? So Pearson clearly requires the agency to accommodate speech, at least in some circumstances, with disclaimers. The disclaimer can make the speech non-misleading. They have to accommodate rather than suppress. So how does that apply in the circumstance we have here, where my understanding of what happens is the following. Your client sought a declaratory ruling about a set of statements. Some of them were what they wanted to say, which was that this ingredient reduces DNA damage. And then they recommended a disclaimer, which talked about health risks of consuming alcohol. And then the agency's response is that's not good enough because the disclaimer doesn't address two concerns that we have. One is the degree of support for the studies. And two is what they think is an implied claim about brain and liver damage. So what happens at that point? Can you be made to bear a burden to propose a new disclaimer in light of the agency's concerns? Or is it their burden to anticipate every possible disclaimer that might work and compose it from scratch for you? They have the burden of proof under the First Amendment. They also have the unique knowledge of what their interest is. Here, the court violated Central Hudson by giving the agency an interest that didn't articulate, and that was consumer fraud. The agency's articulated interest was to reduce the consumption of alcohol, or in other words, it was a health interest. The question as to the disclaimer has arisen numerous times following Pearson and has been dealt with in this manner. The party that is the petitioner will suggest a disclaimer, and then as we did, indicate we would accept any reasonable disclaimer the agency wished to insert. Because the agency has defined, defines its own interest, it necessarily, as a practical matter, is the agency's obligation, consistent with the First Amendment burden, to define a qualification and then to ascertain whether or not it is reasonable by determining the extent to which empirical evidence supports it. So for example, this agency has a history, and Coors reveals it, 44 Liquor Mart reveals it on the state level too from its sister state agencies, of engaging in speculation and conjecture in lieu of empirical data. So if the agency were to say, oh, as it has here, without any proof whatsoever that this information on the label would cause consumers to consume more alcohol, well, it would necessarily have to have empirical evidence to support that, or at least some tangible evidence to show that that indeed happens. And that's what they don't have. They just dismissively dealt with the disclaimer requirement. They didn't honor the requirement under Pearson or any of the Supreme Court's cases from INRI RMJ all the way through Ibanez, did not deal with it fairly at all. Thank you. Let me make sure if my colleagues have any further questions. I do. Oh, please. Thank you, Richard. Mr. Emart, you said, I think you said the district court gave deference, Chevron deference to the agency here. Yes. And Chevron doesn't appear in the district court opinion. What do you find? Well, the agency or the court in its substantive treatment gave broad deference to the agency's findings. In fact, it wouldn't allow So did the agency say it's during that or is that your reading of it? That's my reading of the decision. Second, you said there was no evidence against the claim, correct? Correct. Nobel study found no effect on DNA. Why isn't that evidence against the claim? That's actually erroneous. And I want to point out something that supports why they reached that erroneous decision in their correspondence. That is FDA's correspondence with TTV. They make this remarkable admission. And I quote it. We do not have expertise in this DNA technology or assay evaluation, unquote, J at 1134. They missed it on the Nobel study. The Nobel study actually did have a statistically significant positive result in this respect. The Nobel study was falsely represented as no, as your honor points out, but it used only the comet assay as opposed to the other one. But nonetheless, it revealed a statistically significant protection of tail DNA at the two hour interval, thus adding support for the claim as opposed to being a null event or certainly not being against the claim. Thank you. Thank you, Mr. Rehmor. Unless my colleagues have further questions, we'll give the government its time and we'll hear from you on rebuttal. Thank you, your honors. Mr. Overwalt. Morning, Life Overwalt on behalf of the United States. I'd like to start just with your judgment of us and your question about the legal consequences of the ruling. We didn't make sort of a final agency action argument here. I'm not aware that there is a particular consequence of the denial of the ruling. The standard remains under the statute that misleading advertising would be barred and under the regs, that misleading and for specific health claims, claims that are not adequately substantiated, that would remain the standard. They were not required for the advertising claims in particular to go through this process. Right. So if they weren't required to go through it in the first place, and unless you tell me that if they issued an ad, there's some added consequence, some added penalty that ensued by virtue of the fact that the agency issued this letter, then it's not clear to me why it is final agency action, because I don't know what the legal consequence is of the ruling. And just putting aside the effect, if any, on the COLA, because I understand that there's an argument that that's been wrapped into this. I'm not sure about that, but I understand that the argument is there. But if we just put that to one side for a second and just isolate this question about the letter ruling vis-a-vis advertisements, it's not apparent to me at all why it is final agency action. I'm not aware of a consequence, but we did not make a final agency action argument. So we'd be happy to provide additional information. So let me ask you one other appendage to this, and it may require additional information, but just for purposes of arguments as we have you here, even if you didn't make a final agency action argument and final agency action is non-jurisdictional and therefore it can be wrapped final agency action into ripeness and make it an ingredient of the ripeness inquiry and indicate that a dispute can't be ripe if there's a final agency action problem. If that's true, then do you have a position on whether the dispute is ripe? I do not have a position right now. We do have here a TTP decision that considered the particular claims they were seeking to make and concluded that they could not be made consistent with the statute, but I don't have a position on ripeness at this point. Okay. Then can I ask you about just the piece that we put to one side for the moment, which is the COLA piece? So it's true that the request asked for pre-approval for the labels, and it's also true that the ruling, at least in a couple of sentences, kind of wraps that in both in the preview and in the conclusion, but I didn't read that to be a COLA determination. I just read it to be responding to what the letter asked the agency to do. And the COLA determination was sought by the other entity. I get that, but that entity's not before us. And so as I understand the procedural context, the COLA action isn't directly in this case. This is a letter ruling under the regulation 70.471, and that's how we should treat it. Is that consistent with the government's view? That is the case. That separate COLA application was filed by the separate entity that would actually bottle the vodka product. They are the ones who do have to file the COLA application. That is a separate action that they filed. So then if all that's true, then am I right in understanding this? It's a detailed 47-page determination, that's for sure. But am I right in understanding at the end of the day that it's essentially an advisory, sort of an a priori advisory treatment, but it doesn't carry a legal consequence. It doesn't allow for an addition of a penalty if action's taken in contravention of it. It's the agency sort of giving its views on where it would likely end up if it were say to undertake an enforcement action. I'm not aware of a legal consequence, an additional legal consequence that would follow just with the caveat that we did not make a final agency action argument. Okay, thanks. On the sort of merits of- Can we go to standard of review for a second? Yes, your honor. Suppose we didn't have POM Wonderful for now. We just had Peel. How would you distinguish that case? Sure. Peel involved a sort of forward-looking general regulation, not what we have here, an agency's consideration of the particular claims sought to be made, a determination they were misleading, and this sort of impressionistic judgment akin to a factual judgment. Peel traces back to, I'm sorry, POM traces back to a pre-Teal case in which we said Boaz was just about defamation. In Peel, the Supreme Court says whether the inherent character of a statement places it beyond the protection of the First Amendment is a question of law over which we, the Supreme Court, should exercise de novo review as a CF site to Boaz, and then there is an application of that principle to a question about whether the speech at issue was prescribable because it was misleading. In the 1985 case, your honor? In Peel. In Peel. It is true that the initial decision in this area after Boaz Corr distinguished it on that basis. There have been POM Wonderful, other decisions from this court, decisions from POM Wonderful cites back to a footnote in Novartis which is post-Peel, which simply cites back to the just about defamation. We do have two post-Peel cases which help you, but neither of them seem to have caught the point that the Supreme Court expressly extended Boaz beyond defamation. It did extend it beyond defamation. POM Wonderful also cites favorably the Seventh Circuit's decision in Kraft which does address the particular argument as to Peel that because Peel involved not this sort of consideration of particular claims on the basis of an agency record and the agency's application of its expertise to conclude they are misleading, that remains a different context and we would not want to extend the standard in the distinct Peel context to misleading advertising as viewed by the FTC in POM Wonderful and that line of cases or in this case a similar judgment made by the TTP. Again, that particular advertising, particular claims are misleading on the basis of the substantiation provided. The Sixth Circuit has also considered this question again post-Peel and adopted the same in the Seventh Circuit. Just on the merits of the ruling, this case involves Bellion's efforts to make claims that its vodka product is safer than other vodka products, the health risk associated with the consumption of alcohol, but those claims cannot be substantiated on the basis of the evidence in the record. There's clearly substantial evidence for the TTP's decision on basis of the record and there are for the two human clinical trials that were provided, none of them provide credible evidence for the DNA claims for three separate reasons. The first reason is that none of the studies involved include the dosage information that TTP reasonably considered would be necessary to evaluate their significance as evidence in support of the claims. Before we get into the weeds on the studies and how the law applies to this submission, can I just ask you what does the governing rule under the regs is adequately substantiated? What does that mean? It is adequately substantiated by scientific or medical evidence. Is that conclusively proven? Proven by clear and convincing evidence? Proven by a preponderance? As this decision reflects, it requires at least credible evidence of the type that in the scientific or medical context that you would look for it. We don't even have credible evidence here, so certainly as applied to the claims presented here, it requires more than that. It is a flexible standard that looks to the sort of evidence required to substantiate a claim to make them not misleading. This is again an area where as Kraft recognized judgments that a particular claim is misleading, that is an impressionistic judgment. The regulations provide additional clarity as to what sort of a substantiation you need to make it not misleading. The agency appropriately sort of clarified the standard here, sufficient to conclude that these claims are not substantiated. It didn't have an occasion to go beyond that. Anything that doesn't, any claim that doesn't rise to, isn't supported by relatively high standard of credible evidence is prescribable. Certainly it needs at least credible evidence in support of that. The particular amount of evidence that a particular claim needs to not be misleading does depend on the claim, depends on the entire factual context of the studies. That does seem to start to bump into Pearson, where we said on this specific problem of claims that have some degree of support, but not a conclusive degree of support, we said that that is a circumstance in which the agency has to accommodate by disclaimer. The disclaimer would expect is something that Pearson obviously didn't confront a situation where there was no credible evidence in support of the claims. There was a question about what degree of scientific agreement was significant, and on the APA, in the APA context, and it said pretty categorically that the agency has to whatever, the degree of support, the degree of evidence contradicting the claim outweighs the evidence supporting the claims. Don't hold me to the exact formulation, but the general idea is accommodate in most cases subject to just some outer bound limit. It said that, just to take a step back, it said that in the context of nutritional supplements there was no claim there that they caused any health risks or harm to health, whereas here, it's undisputed that alcohol does create risk. The claims we have here are claims that it will reduce the risk that you would otherwise might incur from consuming alcohol, which I think does put it at least closer to the sports case. I apologize, Your Honor. No, I'm sorry. I'm account for it by giving the agency more latitude with regard to the disclaimer. Rather than just watering down the legal standard, we would say, of course you can put in the disclaimer whatever information you want about the health risks of alcohol and make them say that their statement about DNA doesn't mitigate all of the following serious risks. As this court recognized in NECOPURE, we can at least be more skeptical of the value of disclaimers when it is sort of a claim that a product everyone agrees is harmful is relatively less harmful, that there is a basis for being more skeptical of the value of disclaimers there. And then, again, this is not a case where the agency refused to consider disclaimers at all. The problem is the claims just cannot be substantiated based on the studies, and it is no reasonable disclaimer has been proposed that gets around that problem, that the disclaimer essentially would have to contradict the health claim to adequately capture its unsubstantiated nature. Whose burden is it to propose the disclaimer? It's certainly the underlying standard under the Fourth Prong Central Hudson is not the least restrictive alternative, but not more burdensome than necessary. When the agency does consider the disclaimer proposed, there's no other reasonable disclaimer that they refuse to consider that anyone's identified. It's certainly not the agency's burden to sort of set out in the decision, you know, any conceivable disclaimer. I mean, that idea has a lot of intuitive force to it. No doubt. I'll grant you that. But the sequence that happened was they proposed a disclaimer. You said it wasn't good enough because it neither addressed the degree of support for the express claim nor what you thought was the implied claim. It would seem like that shouldn't be the end of the process of accommodation. If that's as far as the analysis goes, there's a pretty obvious open question of, well, what about a more robust disclaimer that says, number one, the degree of support for this claim is less than conclusive, and number two, we're not saying anything about brain and liver damage. Well, the problem in this case is, if you look, it's not just inconclusive evidence in support of the claim. It's two studies that have no dosage information. Don't fight me on the facts for a second. I'm just sort of, who bears the burden of taking the next step when the parties are at this intermediate position where you've said their disclaimer isn't good enough for two specific reasons, and then what? In the case, I'm not trying to fight the hypothetical, but in a case where the problem identified with the statement itself is it is unsubstantiated by the evidence presented, the agency can reasonably conclude there is no reasonable disclaimer that would essentially counter it. Just hypothetically, that the problem here about lack of, about degree of support were curable through a robust enough disclaimer. Whose burden would it be on these facts to draft that and figure out what words are going to be strong enough in light of these particular studies? If the agency ignored a reasonable disclaimer, that could be a basis for concluding that that aspect of the decision was unreasonable. In the absence of any sort of disclaimer presented or that is sort of generated in the course of considering it, we have not... Which means your position on this particular point just rises or falls on what I just asked you to put aside, which is the fact question about whether the support here is... There's some support, but it's inconclusive as opposed to just there's no support or the evidence against is stronger than the evidence in favor. I think in this case, the agency has justified its judgment that there is not sort of a less restrictive alternative that would satisfy their public health and consumer fraud concerns. You could imagine a different case in which that answer could be different, but here, that judgment is well justified. I have one question on disclaimer, and then just one quick question on prior restraint, but on disclaimer, just to wrap up Judge Cass's line of questioning. In a circumstance in which you have the perceived problem to be that there's just not substantiation, and you use the word credible at some point, and let's just say that there's not credible evidence. What you read the agency to be saying in terms of a disclaimer in that context is there's no disclaimer that can address that, because even if you tried to have a disclaimer that says, oh, there may not be credible evidence, but just you, the consuming public, we want you to know that the evidence may not be credible, but here's what we're saying about it anyway. Your point is, well, that's just not a disclaimer that really does any constructive work, and so there's never an onus under the First Amendment to allow an entity to use that kind of disclaimer as a means for engaging in the speech. That's right, and I would just say that's particularly true with an alcohol product, which is distinct from the nutritional supplements that Pearson considered. Got it. Can I ask you just one quick question about prior restraint? On the prior restraint part of the case, you've made the point in your briefs that there could be a prior restraint problem under the COLA. There could be a prior restraint claim made under the COLA procedures, but those procedures weren't pursued by Bellion, as opposed to the other entity, but by Bellion, and so that's an impediment to making a prior restraint argument, but I didn't see in your brief that you necessarily tethered it to some legal doctrine, and I'm just wondering, does that ultimately become a standing argument, or is there something, what doctrinal footing comes from the intuitive point that in order to make a prior restraint claim, you have to pursue the process that could beget a prior restraint? So, I don't understand them to be challenging the COLA process in their prior restraint argument, so it is just looking at what the arguments they are raising. They are not challenging the COLA process as a prior restraint, and that makes sense because they did not, in fact, go through the COLA process. To the extent they are raising additional challenges about a procedure that does not govern a situation in which pre-approval is required, the prior restraint argument does not work there because it is not actually a system in which pre-approval is required. So, there's no restraint, in other words. So, in other words, on the part of the case that you think is before us, which is what we started off with, which is the kind of advisory letter ruling, that that's not a restraint at all, and therefore it can't be a prior restraint. Yes. They did not use the one procedure that imposes any sort of pre-approval requirement, so there's no challenge to that, and the system they actually used does not impose a pre-approval. So, there's no prior restraint challenge there. Okay. Thank you. Let me make sure that neither Judge Ginsburg nor Judge Katz assess further questions. No, thank you. Okay. Thank you, Mr. Overvalt. Mr. Emord, we'll give you some rebuttal time. We'll give you three minutes. Thank you, Your Honor. It is, I think, false fundamentally, both on the facts and the law, that we're not challenging the prior restraint in the COLA process. Franklin is the agent of Bellion. Let's understand the relationships here. Franklin is the bottler. Bellion is the brand ingredient. All of them are inextricably intertwined, as was the petition with the COLA and the COLA with the petition. They cross-reference one another. It is only because they do not, the TTV lacks a process for this health claim petition in the COLA that we had to resort to the petition process. But their order addresses both. And it is this entire action of the agency which we are addressing in our pleading. It adversely affects us. It is present. There are criminal provisions that the agency has available. For example, the TTV regulations, if they were violated as to the COLA, the TTV regulations both as to labeling and advertising, defines any advertisement not in compliance with TTV regulations as criminal, subject to fines and other sanctions under 27 U.S.C. Sections 204E, 205F, and 207. In addition, as the lawyer who argued the Pearson case, I'm well aware of the argument made by the parent from the pleadings, they did argue that the supplements would be harmful to people. In particular, on the folic acid supplement, they said that it would mask a vitamin B12 deficiency. It was the case that they argued that the use of the claims there in issue did pose a public health threat. And furthermore, as I pointed out before, CORS does not give an exemption on alcohol from the rigors of the central Hudson test. In addition, erection of the anti-competitive regime here, which if the court were to decide it on a procedural basis, creates a capable of repetition but evading review problem, is substantial because it creates a de facto anti-competitive regime. It prevents in perpetuity parties like this one from introducing into the level of harm associated with alcohol. And so it locks this system into an archaic Byzantine ancient alcohol formulation that is always going to be harmful. The irony here is that this agency that says its interest is public health is acting in a way to ensure that the public health is harmed by not allowing the evidence. One last thing, Your Honor. There are 112 studies submitted in support of the claims. The FDA's process excluded 106 of those studies, all animal studies and all in vitro studies. The animal studies, the in vitro studies, all of the evidence and the human trials were considered by the experts that we hired, and they found them all to be consistently supportive of the claims. But the expert of evidence that they looked at, and that is a bias that ensures their foregone conclusion. It's not the case that there was no credible evidence. There was substantial evidence in support of this DNA protection and DNA risk reduction set of claims. And that's all I have, Your Honor. Three more. Let me just take you back a couple of sentences to your prior restraint argument. As I recall, the two important elements of that were whether the standard was too vague, adequate to support, and that there was no time limitation on the agency. Is that correct? Yes, Your Honor. I want to make sure I understand what's happening here on the time limitation. Because as I think everyone agrees, the agency handled the COLA materials as supportive of the petition and treated them through the process as being intertwined. And so the COLA petition, the COLA was filed on April 18th. And 90 days later, pardon me, 180 days later, the additional evidence was supplied by, I guess, by Franklin, I'm not sure by whom, but relevant to the COLA. And the agency ultimately having extended itself to 180 days first, then receiving the additional evidence takes another 183 days. It gave you a deadline by which it would report of April 30th, I believe. And anyway, that would have been the last day. And it reported on May 3rd. So there seems to have been a timeline throughout with a deadline that was reset only when you perfectly reasonable, I'm sure. And then they missed it by three days. So what happens to the argument that there's no time limitation? Well, they have a time limit associated with the COLA review, and they have no time limit associated with the health claim. We've agreed that these two trains are moving along the track together. Yes. And as a consequence, the regulated class has not noticed as to what amount of time the agency will require for health claim petitions. It could have extended its own time limit indefinitely. And with regard to the adequate- Wait a minute. How is that possible? It gives itself 90 days extendable for another 90, not indefinitely. And then it started over when you supplied new information, which could hardly have been surprising. And again, limited itself to 90 and 90. The point I think that we're making, and it's intertwined with the adequate substantiation argument too, is that there is no definition that they have given the regulated class as to the time period they would take for the assessment of a health claim petition. And as a result, there is no reliability. There's no predictability. They could have just- And the 90-day extension, do they appear in the regulations? Pardon me? Do the 90 days and the extended 90 days appear in the regulations? Regulations define the COLA time period, but they have no time period defined for the assessment of a health claim petition. I understand that. And we also agreed that they're moving along together, so I don't know why you keep reiterating that. Well, I- That's enough. Thank you. I appreciate that point, Your Honor. If I may, speaking to the adequately substantiated lack of definition. I think we have your submission on that. I just want to make sure that my colleagues don't have further questions for you in your rebuttal time. No. Okay. I think we have your argument, Mr. Reimord. Counsel, we appreciate both of your submissions today. The case is submitted. Thank you, Your Honors.
judges: Srinivasan, Katsas, Ginsburg